1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

11

ESTATE OF KIM HA RAM, et al.,

Plaintiffs,

v.

RIDE THE DUCKS OF SEATTLE,
LLC; and RIDE THE DUCKS
INTERNATIONAL, LLC,

Defendants.

C15-1929 TSZ

ORDER

12

13

14

15

16

17

18

19

THIS MATTER comes before the Court on a motion for partial judgment on the

pleadings brought pursuant to Rule 12(c) by defendant Ride the Ducks of Seattle, LLC

("Ride the Ducks/Seattle"), docket no. 26.  Defendant Ride the Ducks International, LLC

("RTDI") has joined the motion, docket no. 29.  Having reviewed all papers filed in

support of and in opposition to the motion, including the brief submitted by the State of

Washington as intervenor, the Court CONCLUDES that oral argument would not be

beneficial, STRIKES the hearing set for October 27, 2016, and ENTERS the following

order.

20

**Background**

21

22

23

On September 28, 2015, Ha Ram Kim died from injuries she sustained during a

collision that occurred on September 24, 2015, involving a Bellair Motorcoach, in which

ORDER - 1

1   she was a passenger, and an amphibious tourist vehicle operated by an employee of

2   Ride the Ducks/Seattle.  At the time of her death, Ms. Kim was 20 years of age; she is

3   survived by her parents and two younger siblings.  Her father, Soon Wan Kim, is the

4   personal representative of her estate.  Both her father and her mother, Ju Hee Jeong,

5   reside in the Republic of Korea (South Korea).

6        Ms. Kim's estate has asserted two claims against Ride the Ducks/Seattle, namely

7   (i) negligent maintenance or repair, and (ii) negligent operation.  Her parents have

8   separately alleged against Ride the Ducks/Seattle a claim of outrage (also known as

9   intentional infliction of emotional distress).  All of these claims against Ride the

10  Ducks/Seattle are brought under Washington law.  With respect to RTDI, Ms. Kim's

11  estate has asserted a product liability claim under Washington law, and both Ms. Kim's

12  estate and her parents have brought product liability claims against RTDI under Georgia

13  and Missouri law, asserting a right to punitive damages.  In addition, Ms. Kim's parents

14  have pleaded against RTDI outrage claims under Washington, Georgia, and Missouri

15  law.  In its joinder, RTDI offered no briefing concerning Georgia or Missouri law and, in

16  ruling on the pending Rule 12(c) motion, the Court has limited its analysis to the claims

17  asserted under Washington law.

18        In Washington, tort claims arising from a death caused by the negligence of

19  another are "strictly a matter of legislative grace and are not recognized in the common

20  law."  *Philippides v. Bernard*, 151 Wn.2d 376, 390, 88 P.3d 939 (2004).  Washington

21  statutes define two ways in which such tort claims may be pursued:  (i) as a wrongful-

22  death claim brought by the decedent's personal representative for the benefit of certain

23

ORDER - 2

1  persons, RCW 4.20.010 & .020[1]; or (ii) under the survival of actions statute, which

2  permits the decedent's personal representative to assert the decedent's claims, whether

3  they sound in tort, contract, or otherwise, except that "damages for pain and suffering,

4  anxiety, emotional distress, or humiliation personal to and suffered by" the decedent are

5  recoverable only on behalf of certain persons, namely "those beneficiaries enumerated in

6  RCW 4.20.020," _see_ RCW 4.20.046.  In its motion for partial judgment on the pleadings,

7  Ride the Ducks/Seattle contends that Ms. Kim's parents and siblings are not within the

8  scope of persons for whom a wrongful-death claim may be alleged, or on whose behalf

9  non-pecuniary damages may be sought in a "survival" action.  Ride the Ducks/Seattle

10  also moves to dismiss Ms. Kim's parents' outrage claim as not being cognizable with

11  respect to the facts alleged.  RTDI's joinder in the pending Rule 12(c) motion is viewed

12  as seeking dismissal of only the claims brought against it under Washington law.

13  **Discussion**

14  **A.        Wrongful-Death and "Survival" Actions**

15        At common law, a right of action did not survive a person's death.  _See Warner v._

16  _McCaughan_, 77 Wn.2d 178, 181, 460 P.2d 272 (1969).  In abrogating the common law,

17  the Washington legislature created a two-tier system of beneficiaries.  _See Philippides_,

18  _____

19  [1] RCW 4.20.010 indicates that "[w]hen the death of a person is caused by the wrongful act, neglect, or
    default of another," the decedent's personal representative "may maintain an action for damages against
20  the person causing the death."  RCW 4.20.020 further explains that "[e]very such action shall be for the
    benefit of the wife, husband, state registered domestic partner, child or children, including stepchildren, of
21  the person whose death shall have been so caused.  If there be no wife, husband, state registered domestic
    partner, or such child or children, such action may be maintained for the benefit of the parents, sisters, or
22  brothers, who may be dependent upon the deceased person for support, and who are resident within the
    United States at the time of his or her death."

23

ORDER - 3

1  151 Wn.2d at 385.  First-tier beneficiaries include the spouse or state registered domestic

2  partner and the children of the decedent, if any.  *See* RCW 4.20.020.  Second-tier

3  beneficiaries are the parents or siblings of the decedent who (i) "may be dependent upon

4  the deceased person for support," and (ii) "are resident within the United States at the

5  time of his or her death."  *Id.*  Only if no first-tier beneficiaries exist, which appears to be

6  the situation in this case, may second-tier beneficiaries recover.  *See* *id.*; *see also*

7  *Masunaga v. Gapasin*, 57 Wn. App. 624, 631 n.2, 790 P.2d 171 (1990) (observing that,

8  because the decedent was survived by a minor child, the decedent's parents were not

9  within the scope of persons entitled to recover under RCW 4.20.020).

10       Plaintiffs contend that the dependence and residence requirements for second-tier

11  beneficiaries were impliedly repealed when Washington's Law Against Discrimination

12  ("WLAD") was enacted.[2]  The WLAD, however, indicates that

13       Nothing contained in this chapter shall be deemed to repeal any of the
         provisions of any other law of this state relating to discrimination because
14       of race, color, creed, national origin, sex, marital status, sexual orientation,
         age, honorably discharged veteran or military status, or the presence of any
15       sensory, mental, or physical disability, other than a law which purports to

16

17

18  [2] Plaintiffs' reliance on *In re Li*, 79 Wn.2d 561, 488 P.2d 259 (1971), is misplaced.  *In re Li* concerned the continued validity of an act passed in 1921 that prohibited any person from practicing as an attorney or counselor at law "unless he is a citizen of the United States."  *Id.* at 563 (quoting Laws of 1921, ch. 126). In 1933, the Washington legislature enacted a comprehensive state bar act, which invested in the Board of

19  Governors of the Washington State Bar Association the power to adopt rules, subject to the approval of the Washington Supreme Court, regarding the qualifications for admission to the practice of law.  *Id.*

20  (quoting RCW 2.48.060).  In *In re Li*, the 1933 legislation was deemed to have impliedly repealed the earlier enactment because it covered "the entire subject matter" of the 1921 law, and the two statutes were "so clearly inconsistent with, and repugnant to, each other that they cannot be reconciled and both given

21  effect by a fair and reasonable construction."  *Id.*  In contrast, the WLAD does not cover the entire subject matter of the wrongful-death and "survival" statutes or vice versa, and the laws are neither inconsistent

22  with nor repugnant to each other.

23

ORDER - 4

1
2
3

   require or permit doing any act which is an unfair practice under this chapter.

RCW 49.60.020.  Although RCW 4.20.020 makes distinctions on the basis of marital

status and age, it does not require or permit actions that constitute unfair practices under

the WLAD.  Moreover, with respect to race, color, creed, national origin, sex, sexual

orientation, veteran or military status, and disability, RCW 4.20.020 is facially neutral

and, contrary to plaintiffs' assertion, neither the statute nor its legislative history manifest

any improper animus.  RCW 4.20.020 was not repealed by the WLAD.

   Plaintiffs also challenge RCW 4.20.020's definition of second-tier beneficiaries as

running afoul of both Article I, Section 12 of the Washington Constitution[3] and the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution.[4]  With

regard to the dependence requirement of RCW 4.20.020, plaintiffs' position has been

repeatedly rejected.  Washington courts have observed that parents and siblings who are

financially dependent on a decedent are "affected differently and more directly" by that

person's death than those who are not dependent, and they have held that the distinction

between dependent and non-dependent parents or siblings passes constitutional muster

under rational basis review, which applies because neither a suspect classification nor a

fundamental right is at issue.  *See* *Philippides*, 151 Wn.2d at 391-93; *Masunaga*, 57 Wn.

---

[3] "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."  WASH. CONST. art. I, § 12.

[4] "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend XIV, § 1.

ORDER - 5

1   App. at 628-29, 632-35 (also concluding that RCW 4.20.020 requires financial, as

2   opposed to emotional, dependence); *see also* *Bennett v. Seattle Mental Health*, 166 Wn.

3   App. 477, 492, 269 P.3d 1079 (2012) (holding that "financial dependence is a reasonable

4   basis for determining whether a parent of an adult child can bring an action for the death"

5   of such child, and rejecting a constitutional challenge raised by the mother of a

6   developmentally disabled man who died at the age of 26); *cf.* *Schumacher v. Williams*,

7   107 Wn. App. 793, 28 P.3d 792 (2001) (indicating that a statute concerning the abuse of

8   vulnerable adults, RCW Chapter 74.34, did not by implication amend RCW 4.20.020,

9   and affirming the dismissal of a wrongful-death claim and a "survival" action for non-

10  pecuniary damages brought by the non-dependent sibling of a disabled adult).  The Court

11  concurs with the reasoning of these prior decisions.

12      In contrast, the residence criterion articulated in RCW 4.20.020 has received little

13  judicial attention.  Plaintiffs cite *Anustasakas v. Int'l Contract Co.*, 51 Wn. 119, 98 P. 93

14  (1908), but that case involved first-tier beneficiaries who were nonresident aliens.  At the

15  time, a Washington statute provided that "[n]o action for a personal injury to any person

16  occasioning his death shall abate . . . if he have a wife or child living, but such action may

17  be prosecuted, or commenced and prosecuted, in favor of such wife, or in favor of the

18  wife and children, or if no wife, in favor of such child or children."  Hill's Code of Proc.

19  § 148.[5]  In *Anustasakas*, the alleged tortfeasor argued *inter alia* that the decedent's wife

20  _____

21  [5] The statute was subsequently amended to add that, if the decedent had "no wife or issue," an action
could be pursued on behalf of "parents, sisters, or minor brothers" who are "dependent upon him for

22  support and resident within the United States at the time of his death."  Laws of 1909, ch. 144, § 1.

23

ORDER - 6

1    and minor children could not recover damages for "death by wrongful act or neglect"

2    because they were nonresident aliens.  51 Wn. at 120.  The "survival" statute, however,

3    as then written, made no distinction between residents and nonresidents or between

4    citizens and aliens, and the Washington Supreme Court rejected the tortfeasor's

5    contention, observing that "[t]he plea of alienage is not favored in law, and we are of

6    opinion that the rule which permits nonresident aliens to maintain actions of this kind is

7    supported by the weight of authority, and is more in harmony with the liberal

8    cosmopolitan spirit of the age than the narrow provincial rule which would close our

9    courts to widows and orphans solely because they happen to be nonresident aliens." _Id._

10   at 123.  _Anustasakas_ did not involve a constitutional challenge to legislation, but rather a

11   litigant's attempt to import into the law a condition precedent to litigation where none

12   existed before.  The case is not on point.

13        Plaintiffs also rely on _Puente Ariz. v. Arpaio_, 76 F. Supp. 3d 833 (D. Ariz. 2015),

14   which was reversed in part and vacated in part by the Ninth Circuit, _see_ _Puente Ariz. v._

15   _Arpaio_, 821 F.3d 1098 (9th Cir. 2016), after plaintiffs' response brief was filed.  At issue

16   in _Puente_, was an Arizona law that prohibited the use of a false identity with the intent to

17   obtain employment.  821 F.3d at 1101-02.  Although the law was enacted, at least in part,

18   to address problems stemming from illegal immigration, _id._ at 1102, the statute is itself

19   "textually neutral," applying with equal force to "unauthorized aliens, authorized aliens,

20   and U.S. citizens," _id._ at 1105.  Thus, the Ninth Circuit concluded that the immigrant

21   advocacy group's facial challenge lacked merit because the Arizona legislation was not

22

23

ORDER - 7

1   preempted by federal immigration law in all applications.  _Id._ at 1104-08.  The case was

2   remanded for further consideration of the as-applied preemption claim.  _Id._ at 1110.

3         _Puente_ does not support, but rather undermines, plaintiffs' position in this case.

4   Like the identity theft law analyzed in _Puente_, the wrongful-death and "survival" of

5   actions statutes at issue in this case are "textually neutral."  The residence restriction for

6   second-tier beneficiaries does not distinguish between citizens and non-citizens or on the

7   basis of race, national origin, or other impermissible immutable characteristic.  A resident

8   alien, who is a financially dependent parent or sibling of a decedent, may recover under

9   RCW 4.20.020 to the same extent as a similarly situated American citizen residing in the

10  United States.  Thus, in enacting the residence provision, Washington has not denied "to

11  any person _within its jurisdiction_ the equal protection of the laws."  U.S. CONST.,

12  amend. XIV, § 1 (emphasis added); _see also Wo v. Hopkins_, 118 U.S. 356, 369 (1886)

13  (observing that the Fourteenth Amendment's "provisions are universal in their

14  application, _to all persons within the territorial jurisdiction_, without regard to any

15  differences of race, of color, or of nationality" (emphasis added)); _cf. Johnson v._

16  _Eisentrager_, 339 U.S. 763, 771 (1950) ("in extending constitutional protections beyond

17  the citizenry, the Court has been at pains to point out that it was the alien's presence

18  within its territorial jurisdiction that gave the Judiciary power to act").

19         The Court is satisfied that the financial dependence and residence prerequisites

20  for second-tier beneficiaries set forth in RCW 4.20.020 do not violate either Article I,

21  Section 12 of the Washington Constitution or the Equal Protection Clause of the

22

23

ORDER - 8

1   Fourteenth Amendment of the United States Constitution.[6]   Plaintiffs have not pleaded

2   that Ms. Kim's parents and/or siblings were financially dependent on her, and the facts

3   alleged in the complaint do not support such inference.  According to the complaint,

4   Ms. Kim had arrived in the United States shortly before the collision at issue, and was

5   enrolled for the 2015 fall quarter at North Seattle College; her status as a prospective

6   student suggests that she was dependent on her parents, and not they on her.  If financial

7   dependence was plaintiffs' sole hurdle, the Court would be inclined to grant them leave

8   to amend their pleading, but plaintiffs also fail to meet the residence requirement, and any

9   attempt to cure the pleading would be futile.  Thus, as to the wrongful-death claim and

10  the prayer for non-pecuniary damages in the "survival" action, Ride the Ducks/Seattle's

11  motion for partial judgment on the pleadings, as joined by RTDI, is GRANTED, and

12  such claim and prayer under Washington law against both Ride the Ducks/Seattle and

13

14  _____

15  [6] Plaintiffs have not identified any case that has extended to non-resident aliens the protections afforded under the Fourteenth Amendment.  Instead, they have cited opinions concerning distinctions made on the basis of illegitimacy or the nature of the claims being asserted.  _See_ _Glona v. Am. Guar. & Liab. Ins. Co._,

16  391 U.S. 73 (1968); _Levy v. Louisiana_, 391 U.S. 68 (1968); _Schroeder v. Weighall_, 179 Wn.2d 566, 316 P.3d 482 (2014).  In both _Glona_ and _Levy_, the United States Supreme Court held that Louisiana courts could not, consistent with the Equal Protection Clause, bar recovery for wrongful death on the ground that

17  either the decedent or the heir was an illegitimate child.  _Glona_, 391 U.S. at 75-76; _Levy_, 391 U.S. at 72. _But see_ _Parham v. Hughes_, 441 U.S. 347 (1979) (holding, under rational basis review, that Georgia could

18  statutorily condition a father's right to pursue a wrongful-death claim for the death of his child on his having previously undertaken his paternal responsibilities and made such child legitimate).  In _Schroeder_,

19  the Washington Supreme Court struck down, pursuant to Article I, Section 12 of the Washington Constitution, a statute that treated medical malpractice actions differently from other types of lawsuits with respect to the tolling of the limitations period during a plaintiff's minority.  179 Wn.2d at 570, 578-

20  79.  The cases on which plaintiffs rely are not instructive.  Moreover, unlike in _Glona_ and _Levy_, in which the statute offered relief, but the courts had interpreted the law improperly, and unlike in _Schroeder_, in

21  which one statute purported to limit the application of another, favorable statute, in this case, plaintiffs challenge the exact statute under which they seek to recover and, if their constitutional attack was

22  successful, they would have no right of action because none exists at common law.

23

ORDER - 9

1    RTDI are DISMISSED with prejudice.  The similar claims and prayers under Georgia

2    and Missouri law remain pending against RTDI.

3    **B.      Outrage**

4           Under Washington law, a plaintiff may not recover for either intentional infliction

5    of emotional distress (outrage) or negligent infliction of emotional distress "if he or she

6    did not witness the accident at issue and did not arrive shortly thereafter, meaning that he

7    or she did not see the accident or the horrendous attendant circumstances." _Colbert v._

8    _Moomba Sports, Inc._, 163 Wn.2d 43, 55, 176 P.3d 497 (2008); _see Grimsby v. Samson_,

9    85 Wn.2d 52, 60, 530 P.2d 291 (1975).  Although Ms. Kim's parents' undoubtedly

10   suffered distress over the loss of their daughter and during the days spent with her at the

11   hospital, they did not observe her injuries at the scene or the aftermath of the collision

12   before the material changes effected by emergency aid personnel occurred, and they

13   cannot pursue a claim for intentional or negligent[7] infliction of emotional distress under

14   Washington law.  _See Colbert_, 163 Wn.2d at 63.  Thus, as to such claim, Ride the

15   Ducks/Seattle's Rule 12(c) motion, as joined by RTDI, is GRANTED, and the outrage

16   claims under Washington law against Ride the Ducks/Seattle and RTDI are DISMISSED

17   with prejudice.  The outrage claims under Georgia and Missouri law remain pending

18   against RTDI.

19

20   _____

21   [7] Although Ms. Kim's parents did not plead a claim of negligent infliction of emotional distress, Ride the
     Ducks/Seattle's Rule 12(c) motion addressed such claim in anticipation of plaintiffs' potential argument
     that they meant to plead it rather than outrage (intentional infliction of emotional distress) and wish to
22   amend their complaint.

23

ORDER - 10

1 **Conclusion**

2       For the foregoing reasons, defendant Ride the Ducks of Seattle, LLC's Rule 12(c)

3 motion for partial judgment on the pleadings, docket no. 26, as joined by Ride the Ducks

4 International, LLC, docket no. 29, is GRANTED, and the claims against both Ride the

5 Ducks/Seattle and RTDI under Washington law for wrongful death, non-pecuniary

6 damages in connection with the "survival" action, and outrage (intentional infliction of

7 emotional distress) are DISMISSED with prejudice.

8       IT IS SO ORDERED.

9       Dated this 17th day of October, 2016.

10

11

12                       Thomas S. Zilly
                      United States District Judge

ORDER - 11